WESTERN ADVERTISING COMPANY, Respondent, v. THE STAR PUBLISHING COMPANY, Appellant.

St. Louis Court of Appeals, December 14, 1909.

1. **CONTRACTS: Several Instruments Construed as One.** Several instruments, if made at the same time, between the same parties, and in relation to the same subject-matter, will be read together as one contract, even in the absence of any reference in one to the other and though the parties are not the same, if the contracts were known to all the parties and were delivered at the same time to accomplish an agreed purpose.

2. **———: ———: Intention of Parties: Case Stated.** A lease provided that $600 of the rental should be paid yearly in advertising the business of another tenant of the lessor.   Several months afterwards, said tenant entered into an advertising contract with said lessee (an advertising company) whereby it agreed to pay $666.66 per month, for three months, for advertising, and in which it was stipulated, "No verbal conditions recognized.   All stipulations must be embodied in the contract itself."   The same agent signed both the lease and the contract on behalf of the advertising company, but the other parties to said lease and contract, respectively, were not represented by the same agent.   In an action by the advertising company for the recovery of two monthly installments for advertising performed under said contract.   *Held*, (1)   The lease and contract not having been delivered at the same time, to accomplish an agreed purpose, and having been made by entirely different parties and with no reference whatever to each other, cannot be construed together and read as one contract.

(2) That if the agent who signed the advertising contract for defendant did not know of the lease and had forgotten its terms, all claim of unity between the lease and contract was thereby destroyed, and if, on the other hand, he did know the terms, the reasonable inference is, he left them out of the contract on purpose; and hence there is no presumption defendant intended to apply its credit for advertising for $600, under said lease, on said contract for advertising, upon which the suit was brought.

3. **INSTRUCTIONS: Finding by Trial Court.** Where declarations of law are given at the instance of one of the parties, and the court makes a finding against him, the presumption is the court found the facts to be contrary to his contention.

4. **APPELLATE PRACTICE: Finding by Trial Court Conclusive.** Findings of the trial court on conflicting evidence will not be disturbed on appeal.

5. **EVIDENCE: Presumption of Fact.** A presumption of fact will not be permitted to contradict or overcome facts actually proved.

Appeal from St. Louis City Circuit Court.—*Hon. Robt. M. Foster,* Judge.

AFFIRMED.

*Richard A. Jones* and *Eustace C. Wheeler* for appellant.

(1) The two papers, *i. e.,* the lease by which the advertising company agreed to furnish advertising for the use and benefit of the Star Publishing Company, and the contract dated March 31, 1905, to furnish advertising for the same corporation at the rate of $633.33 per month, are one contract and should be construed together. Lawson on Contracts, sec. 329; Stacey v. Randall, 17 Ill. 467; Hill v. Huntress, 43 N. H. 480; Makepeace v. Harvard College, 20 Am. Dec. 521; Wallis v. Beauchamp, 15 Tex. 303; Owings v. Emery, 7 Gill. 405; Benen v. Green, 8 N. Y. Supt. Ct. Rep. 382; Johnson v. Wood, 84 Mo. 489; Railroad v. Levy, 17 Mo. App. 501; McDonald v. Wolf, 40 Mo. App. 302; Seitzinger v. Ridgway, 4 Watts & L. 472; Bailey v. Railroad, 84 U. S. 96;

Waples v. Jones, 62 Mo. 440. (2) In the absence of any testimony to the contrary, and in view of the silence of the contracting parties, the presumption of law known as the presumption of regularity must be invoked, and this presumption will compel the conclusion that the advertising to be furnished by the terms of the lease must be credited on the advertising. Sowders v. Railroad, —Mo. App.—(not yet reported) ; Blodgett v. Schafer, 94 Mo. 652; White v. England, 110 Mo. 474; Fitzgerald v. Barker, 85 Mo. 13; Wendover v. Baker, 121 Mo. 273; Railroad v. Hurley, 18 Am. Bankruptcy Rep. adv. sheets, No. 4, p. 397; Fox v. Windes, 127 Mo. 502.

*Abbott & Edwards* for respondent.

(1) The contract dated March 31, 1905, was complete in itself and the court erred in admitting in evidence the lease and conversations alleged to have taken place prior to the execution of the lease, subsquent to the execution of the contract of August 15, 1904, and contemporaneously with the contract dated March 31, 1905, because written instruments cannot be contradicted by oral testimony and antecedent negotiations are merged in or superseded by a written contract relating to the same subject-matter. Insurance Co. v. Smucker, 106 Mo. App. 304; Roe v. Bank, 167 Mo. App. 406; Bank v. Carry, 67 Mo. App. 12. (2) The lease dated January, 1904, and the contract of March 31, 1905, are not to be read together and considered as one contract. The contract of March 31, 1905, is a complete written contract entered into between different parties over one year after the execution of the lease. The rule in Missouri with relation to defendant's contention is set forth in Houck v. Frisbee, 66 Mo. App. 16.

STATEMENT.—Action against defendant to recover $1266.66 claimed to be due for advertising space in street cars.

On January 15, 1904, the plaintiff, Western Advertising Company, leased from the Star Building Company ten rooms in the Star building, in St. Louis, for a term of five years from January 15, 1904. A clause in this lease is as follows: "Of the rental hereinabove specified to be paid, six hundred ($600) dollars thereof shall be paid yearly in street car advertising by the lessee of the business of the lessor's tenant, the Star Publishing Company."

A written contract was afterwards entered into between plaintiff and defendant, on March 31, 1905, by the terms of which defendant agreed to pay plaintiff at the rate of $633.33 per month, on the tenth day of each month, for three months, commencing April 1, 1905, for the space. Another contract, of date August 15, 1904, between the same parties for advertising space for twelve months from October 15, 1904, was in force on March 31, 1905, which then had some six months to run, and which contract it was specified in that of March 31, 1905, should "stand suspended from April 1, 1905," until a note of the defendant had been paid, after payment of which note, the contract of August 15, 1904, should be cancelled. In the contract sued on as well as in that of August 15th, it is provided that it should not be binding unless approved by the president of the plaintiff and that, "No verbal conditions recognized. All stipulations must be embodied herein." The note above referred to was subsequently paid and the contract of August 15, 1904, accordingly cancelled, so that at the date of institution of this action the only contracts out and unsettled were the lease of January 15, 1904, between the Star Building Company and this plaintiff, and the advertising agreement of date March 31, 1905, between plaintiff and defendant. There was six hundred dollars rental due or to accrue on the lease, and $1266.66 due on the advertising contract. Defendant had apparently paid one month's installment on the March, 1905, contract in cash. Some time in July, 1905,

the advertising contract having been before then duly fulfilled on the part of plaintiff, by having done the advertising contracted for, and it having demanded some time before then payment for the two months' advertising, defendant tendered plaintiff a check for $666.66, and a receipt for rent for the rooms in the Star Building, the receipt being signed by the Star Building Company. Plaintiff refused the tender, insisting on payment of the whole $1266.66 in cash. This receipt is dated July 15, 1905, and reads: "Received of Western Advertising Company six hundred dollars in street car advertising as per terms of lease for current year." Defendant claimed in its answer and at the trial that the agreement in the lease relating to the allowance of rent on account of advertising covered the advertising done under these contracts and that it, defendant, had a right to satisfy six hundred dollars of the amount due under the advertising contract by the rental receipt tendered. Tender of a receipt for that and of the $666.66 in check having been refused, defendant tendered in court and deposited with the clerk there $666.66 and declared its willingness to credit the remaining $600 on the rental account. No point is made on the tender not being a legal tender, both parties treating the check of defendant as perfectly good.

At the trial, which was before the court, a jury being waived, evidence was introduced by defendant, tending to prove that in a conversation between Messrs. Hill, represeting plaintiff, and Mr. August Frank, representing defendant, held after the execution of the contract of August 15, 1904, one of the Messrs. Hill had told Mr. Frank that defendant could not take all of the rental called for in the lease for the four years out of the whole advertising bill, but that it could "only take for each year one year's—only one year (rent) will apply during the year on this (the advertising) order, not the whole of the four years." This evidence was objected to for various reasons, among others, that the

advertising contracts specified that "no verbal condi-
tions" would be recognized, and that all the stipulations
of the contract were embodied in it; that all agree-
ments were merged in the written contract and could
not be waived by parol.   This same objection was prac-
tically interposed when the lease was offered in evidence
by the defendant, with the further objection that the
advertising contract was complete in itself, and that the
lease was a distinct and separate contract and the pro-
vision in it as to advertising had nothing to do with the
advertising contract here sued on.   The court admitted
this testimony subject to the objection and with the
statement that he would determine afterwards as to its
competency, relevancy and effect.   On the part of plain-
tiff, testimony was given tending to show that no such
conversation as testified to by the witness for defendant
had ever taken place, the Mr. Hill, who was quoted by
defendant's witness, Mr. Frank, denying in unequivocal
terms that he had ever had any such conversation with
Mr. Frank or any conversation in which anything of the
kind had occurred.   There was some testimony tending
to prove that the plaintiff, in 1904, had done advertis-
ing for defendant to the amount of six hundred dollars
or more, under the advertising clause in the lease, which
testimony was contradicted by defendant.   There was
also some testimony tending to prove that plaintiff had
offered and stood ready and was always able to do the
amount of advertising referred to in the lease, outside
of that called for in the contracts, but that defendant
had not, in the following years, demanded it.   Apart
from the above testimony, the testimony in the case was
confined to the advertising agreements and the lease be-
fore referred   to,   the   receipt   and   correspondence
making and refusing the tender.   The fact of the tender
of the $666.66, and of a receipt from the Star Building
Company for six hundred dollars on account of the rent
was in evidence.

At the conclusion of the testimony, the court, at the request of the defendant gave three declarations of law. The first was to the effect that if the court, under other instructions given, found in favor of the defendant and that prior to the institution of the suit, defendant was ready, willing and offered to pay plaintiff the sum of $666.66, but the plaintiff refused to receive the same, and that the defendant prior to the trial of the cause had tendered and paid into court for the use and benefit of plaintiff, the sum of $666.66, then the finding and judgment of the court should be in favor of plaintiff for the $666.66, without interest and against plaintiff for costs. The second instruction was to the effect that if defendant's order for street car advertising of August 15, 1904, was given and received in contemplation of the provisions of the lease of January 15, 1904, the court would be justified in presuming, in the absence of evidence to the contrary, that the modification of the order of March 31, 1905, was subject to the same understanding and that if the court, under the other declarations of law and the evidence, and under this declaration, found in favor of defendant, the finding should be only for the excess of advertising done over the amount defendant was, under the terms of the lease, entitled to have done during 1905. The third declaration was to the effect that under the terms of the lease of January 15, 1904, the defendant was entitled to receive during each year of the leasehold period, six hundred dollars of street car advertising, "and in the absence of evidence to the contrary, subsequent orders given by defendant for such character of advertising will be presumed to have been given by defendant and received by plaintiff in contemplation of the service agreed to be rendered thereunder."

No declarations of law were asked by plaintiff, the above being the only ones given.

After having had the case under advisement, the court found in favor of plaintiff and entered a judgment

in its favor in the sum of $1378.33, being the principal of the amount sued for and interest. A motion for new trial was filed in due time, as also a motion in arrest of judgment. These were overruled and defendant, saving exception, perfected an appeal to this court.

REYNOLDS, P. J. (after stating the facts).— It will be seen from the statement of facts in the case that the contention of the defendant was based upon the proposition that the lease of January 15, 1904, and the two advertising contracts of August 15, 1904, and March 31, 1905, were to be construed as practically one instrument, and that the advertising done under the two contracts for advertising was the advertising contemplated in the lease and that rental at the rate of six hundred dollars a year could be applied on the advertising account represented by these two contracts. As an additional point to the one referred to above, that is, that the three papers practically constitute one contract, counsel for defendant took the position that, in the absence of any testimony and taking these papers by themselves, the defendant could invoke what its counsel call the "rationale of the case" or "the rule of regularity;" meaning by this, that the presumption of law is that people act in a regular or orderly way and conduct their business so as to protect their interests and make it profitable, and they cite in support of this, among other cases, Sowders v. Railroads, 127 Mo. App. 119, and Wernwag v. C. & A. Ry. Co., 20 Mo. App. 473. Hence they contend that this presumption invoked in this case should result in a judgment by the court if all the parties to the transaction were silent; that it was the intention of the defendant to apply on the second contract all the credit its account had with plaintiff before liquidating the same and that as the credit of the defendant with the plaintiff at the time of liquidation was six hundred dollars, the natural supposition or "rule of

146 App.—7

regularity," as counsel call it, would lead to the result that it was the intention and in the minds of the parties to the contract that before one party was called on to pay the other any sum, he was entitled to payment or a credit for what was due him.

Without going into an extensive argument or cita- tion of authorities in the case, we hold that the first. position taken by the appellant, that the lease and the advertising contract constituted one contract and are to be construed together or to be read together as one con- tract, is not tenable. There is no question whatever of the correctness of the position that a contract may be contained in several instruments, which, if made at the same time and between the same parties and in relation to the same subject-matter, will be read together as one instrument, and this is so even in the absence of any reference in the one to the other. This rule is an- nounced by Judge BIGGS, speaking for this court in Houck v. Frisbee, 66 Mo. App. 16, the same judge, in McDonald v. Wolff, 40 Mo. App. 302, l. c. 309, had before then stated, as a well recognized rule of law, "that a contract may be contained in several instru- ments, which, if made at the same time, between the same parties and in relation to the same subject-matter, will be held to constitute but one contract; and for the purpose of arriving at the true intention of the parties all the instruments will be read as one, and the recitals in each may be explained or limited by reference to the others; and it is not necessary that the instruments should in terms refer to each other." After citing au- thorities in support of this proposition, including that of Gammon v. Freeman, 31 Me. 243, Judge BIGGS calls attention to the fact that it had been held in that case by the Supreme Court of Maine, that to make two or more instruments one transaction or contract, it was not necessary that the parties to each instrument should be the same; it was sufficient if the contracts were known to all the parties, and were delivered at the same

time to accomplish an agreed purpose. Applying this principle to the facts in this case, it is to be said that while the parties to the lease and to the advertising contract were not the same on the face of the papers, it is manifest that the contracts were known to all the parties to each of the contracts as well as to the lease; for the officers of the building company and of the publishing company were the same persons, and it is averred and not disputed, that the publishing company accepted, or was willing to accept, the provision in the lease made, for its benefit, though the publishing company was not a party to the lease. But when this is granted, it is the only one of the features or incidents in the transaction that brings the defendant within the rule announced as to the interpretation or construction of contracts. It appears affirmatively that the contracts were not delivered at the same time to accomplish an agreed purpose, so that this essential element, that of one, contemporaneous act, is absent from the case. Referring back to the dates, the lease is dated January 15, 1904, and the first advertising agreement is dated August 15, 1904, while the advertising contract in suit and over which the contention has arisen is dated March 31, 1905. Even granting that the agreement of August 15, 1904, is carried forward by that of March 31, 1905, it appears that each of these advertising contracts contain the very clear statement printed in each of them, "No verbal conditions recognized," and "All stipulations must be embodied" in the agreements themselves. In the face of these specific agreements, as to which there is no pretense that the defendant was deceived, misled or imposed upon in accepting, it is impossible to inject or interpolate into these contracts the terms and conditions of the lease, made nearly eight months before the first of the advertising contracts was entered into, and between entirely different parties, and with no reference whatever in the one to the other. We say between entirely different parties, because while the lease contained a

clause for the benefit of the publishing company, the
publishing company was not a party to that lease in any
legal sense, so as to entitle it to be brought within this
rule of identity of party. We are met also with the
fact that the court gave the declarations of law asked
by the defendant which involved the proposition that
the court must find as a fact that it was the intention
of the parties to the instruments and to the lease con-
tract and to the advertising contract, that they should
form parts of one and the same transaction. This is
substantially the fact that the court was required to find
as a fact in the declarations of law asked and given at
the instance of appellant (defendant), before it could
find for defendant. These declarations of law being
given and a finding following for the defendant, the pre-
sumption is that the court found as a fact contrary to
the contention of the defendant. We are concluded by
that finding, as the only parol evidence tending to con-
tradict this or to throw any light upon this question of
intention and understanding of the parties, was flatly
contradictory, the defendant's witness asserting such an
arrangement, the plaintiff's witness positively denying
it. Under such a state of the evidence, the question of
fact involved was for the determination of the court,
sitting as a jury, with which we cannot interfere.

As to what is called the "rule of regularity," so in-
geniously evolved and ably argued by the learned coun-
sel for the appellant, we are compelled to say that we
do not agree with them in their conclusion on it. We
cannot find that there is anything whatever in the trans-
action here involved to raise the conclusive presump-
tion, as argued by counsel, that defendant intended to
apply its credit for advertising on the order for adver-
tising it was giving in the advertising contract of March
31, 1905. The most that can be said is that as to that
the evidence is conflicting. Counsel for appellant, in
support of this position, rely upon Fitzgerald v. Barker,
85 Mo. 13; Blodgett v. Schaffer, 94 Mo. 652; White v.

Ingram, 110 Mo. 474; Wendover v. Baker, 121 Mo. 273, and Fox v. Windes, 127 Mo. 502, and quote from Wendover v. Baker, l. c. 296, quoting to the end of the quotation from Greenleaf. We quote the whole paragraph, as follows:

"No one can carefully read this testimony without reaching the indubitable conclusion that defendant felt that he must have and present some excuse for failing to demand the notes or to assert his legal right to them during the six years and a half that Judge Dryden 'his most important witness' remained alive. This $370 story is evidently an afterthought; it is contrary to the 'ordinary course of business' and to the 'experience of common life,' in favor of which the law will always presume (Fitzgerald v. Barker, 85 Mo. 13; Bank v. Aull's Adm'r, 80 Mo. 199); that defendant, whom the law will hold was presumptively 'vigilant in guarding his property and prompt in asserting his rights, orderly in conducting his affairs, and diligent in claiming and collecting his dues' (1 Greenleaf on Evidence, sec. 38) would suffer his notes, the possession of which constituted prima-facie evidence against him, to remain in the hands of an attorney, that attorney drawing near to life's close, without defendant taking any steps to enforce his rights or to compel the observance of a contract faithfully and promptly completed on his part, and especially so, when that attorney acting in bad faith, according to defendant's story, had declined to comply with the contract, and had endeavored to exact an additional and unwarranted moneyed consideration for consummating that contract."

Applying that to the facts in the case at bar as disclosed by the record of the evidence, it strikes us that they fall very far from sustaining counsel's argument. No one, with this record before him, would suppose that astute business men would enter into these arrangements of lease and advertising and make no reference in the one to any of the provisions of the other, if it

was intended to have them read or run together. The officers of the two companies, that is of the building and of the publishing company, who signed the lease and the advertising contracts, do not appear to be the same persons, while the same officer who signed the lease for plaintiff signed the advertising contract of March 31, 1905. When signing this contract, he surely knew of the lease and of its provisions, but made no reference to it in the contract. If the officer signing the advertising agreements for defendant did not know of the lease or forgot its terms when he signed these agreements, it destroys all claim to unity between the lease and the contracts; for, on the one hand, a man cannot be presumed to intend to embody in one contract the terms of another, of which he knew nothing or which he had forgotten, and on the other, if that officer knew of and remembered the clause in the lease and left it out of the advertising contract, the reasonable inference is that he did so of purpose. Moreover, defendant had paid these monthly charges and all of the amount due under both advertising contracts, down to the two last, and never set up a claim to deduct the rent until July 15, 1905, long after rent was due and after it was long in default on the advertising contracts. Nor is the "rationale of the case," or "the rule of regularity" violated, if we suppose that the defendant desired to advertise on a much larger scale than called for in the advertising contracts. It is not unreasonable to suppose, that over and above the amount called for by those contracts, it had in contemplation the probability of advertising on a larger scale, and so provided for it in the lease, or more accurately, had its landlord do it. There is some slight evidence tending to show advertising done outside of the contracts, paid for by being applied on the rent. It is to be noted that the advertising clause in the lease is lacking in definiteness—all there is to it is that six hundred dollars of the rental shall be paid yearly "in street car advertising," to be done by the

Western Advertising Company, of the business of the Star Publishing Company, and one of the officers of plaintiff testified that some of this, at least six hundred dollars worth, had been done in December, 1904. Who can say that this contract to do six hundred dollars worth each year in a four-year-term lease, is met by a twelve-months advertising contract, as was that of August 15, 1904, or by a three-months contract as was that of March 31, 1905? The doctrine of "rationale" does not fit this case. Nor do the facts in the other cases cited fit this case.

In Sowders v. Railroads, supra, Judge NORTONI, l. c. 124, announces as the rule of presumption this, in substance: That presumptions are divided into two classes, irrebuttable, or presumptions of law, and rebuttable, or presumptions of fact. They are irrebuttable when a particular inference of fact is necessarily drawn from certain established facts. Presumptions of fact arise from other facts in proving and supplying an omitted fact in accord with the dictates of human experience on like questions. These are rebuttable; they merely amount to an assumption of what may be true as indicated by probabilities and the rationale of experience and may be overcome or removed from the case by competent proof going to supply the fact presumed. In the case at bar, we take it that the fact in proof is the language of the lease and of the contracts. This language discloses no intention of making these contracts one and indivisible. The proof offered and produced, in the judgment of the trial court, did not overcome the presumption arising upon the plain language of the lease and of the contracts. So they fall within what Judge NORTONI, in the Sowders case, states to be the well-established rule, namely, that "a presumption of fact will not be permitted to contradict or overcome facts actually proved."

On consideration of the case, on the facts and the law, our conclusion is that the judgment is for the right

party and that there is no error to the prejudice of defendant in the action of the trial court. Its judgment is affirmed. *Goode, J.,* concurs. *Nortoni, J.,* not sitting.